## CIRCUIT COURT OF ARLINGTON COUNTY

In re: Amanda Perry,
Sabrina Perry, and Johnny Perry

August 9, 1983

Case No. (Chancery) 33595

By JUDGE CHARLES H. DUFF

This matter is before the Court upon application of the Arlington County Department of Human Resources for the termination of residual parental rights of Wanda Kay Perry to her three children pursuant to Section 16.1-283(B) and (C), *Code of Virginia*, 1950, as amended. The children are Amanda, age six, Sabrina, age five, and Johnny, age three. The children have been in the custody of the Department of Human Resources since October 10, 1980, and have been in foster homes that entire time. After a full hearing in the Arlington Juvenile and Domestic Relations District Court, an Order was entered October 22, 1982, terminating residual parental rights under both Code provisions cited above, committing the children to the Department of Human Resources and directing the Department to make permanent plans for the placement of the children. The father, Johnny Ray Perry, did not appeal that Order and is not before this Court. Ms. Perry did perfect her appeal and a trial *de novo* was heard June 1 and 2, 1983, and July 20, 1983. Able argument has been presented and I have reviewed the applicable authorities cited and hasten to advise you of my conclusions.

The initial incident giving rise to the Department's involvement herein occurred October 10, 1980, when Barbara Johnson, the Department's Foster Care Supervisor, was called to a residence occupied by the Perrys at 2506 Wilson Boulevard, Arlington, Virginia. This was shortly after midnight and the evidence taken at hearing revealed that the house was in a

filthy and overcrowded condition. There were approximately ten adults therein, all in a state of intoxication. Mrs. Johnson testified that Mr. Perry was passed out on a bed, "wrapped around one of the children." She observed Mrs. Perry with a can of beer in her hand and having difficulty standing on her own. She appeared intoxicated. She further testified that there was a dog under the bed and a dog bowl in the room, and the room had a strong odor of feces. Dirty clothes and pots and pans were strewn around. Mrs. Johnson felt that there was a clear potential for violence in the house, that the children had been neglected as they were quite dirty and that they should be removed from the home and placed in foster care. The police took photographs of the inside of the house and these clearly support the conclusions reached by Mrs. Johnson.

Thereafter the Department submitted four judicial foster care service plans which were reviewed by the Juvenile Court. These came into evidence as Commonwealth's Exhibit No. 20. They revealed that at each review various goals were identified relating to the parents' responsibilities in working toward creating a proper and stable home to which the children could return. No useful purpose will be served by detailing each of the goals and the varying degrees of compliance therewith attained by Ms. Perry. Suffice to say the primary problem was her habitual abuse of intoxicating liquors to the extent that proper parenting ability would be impaired.

The evidence further reveals that various services were suggested and/or made available to Ms. Perry. The focus of these services were directed toward the alcohol abuse and the volatile nature of the parents' relationship. These two principle areas had been the primary areas of intervention since the family first became known to Fairfax Protective Service from approximately September, 1976, to September, 1979, and with Arlington Pro-Child from December, 1979, to October, 1980. The services extended included marital counseling, alcohol counseling, transportation services, job training, employment counseling, emergency food, etc.

While there exists some conflict in the evidence, I am entirely satisfied that Ms. Perry did not make

the required effort to cooperate with the Department in achieving the goals outlined. Up until July, 1982, the Department's goals were the return of the children to their parents; however, on the latter date, the goal changed to adoption in view of the long period of time that had elapsed and the apparent unwillingness or the inability of Ms. Perry to correct her alcohol problem and meet the other objectives of the goals. Candor requires the observation that for a while Ms. Perry did make what appeared to be a reasonable effort in this regard, getting full-time employment at Drug Fair and satisfying the Department that she could receive alcohol therapy by telephone communication with a counselor. However, in the Spring of 1982 she lost her job with Drug Fair nd the evidence indicates that she discontinued her telephone therapy. Thereafter the Department changed the goals as indicted above and petitioned the Juvenile Court for termination of parental rights.

Finally, the evidence from Officer Terry Murray revealed that in December, 1982, he went to Ms. Perry's home upon the complaint of a cab driver that she had refused to pay her fare. He found Ms. Perry intoxicated and profane with her husband passed out on the bed. Again, around Washington's Birthday, 1983, the Officer found Ms. Perry lying in a snowbank near her home, extremely intoxicated.

I have carefully reviewed the decisions of *Knox* v. *Lynchburg*, 223 Va. 213 (1982), *Toombs* v. *Lynchburg*, 223 Va. 225 (1982), *Harris* v. *Lynchburg*, 223 Va. 235 (1982), and *Richardson* v. *Department*, 223 Va. 670 (1982). The first three of the above decisions involved cases arising under Subsection (C) of the Statute; the last decision involved Subsection (B). I am satisfied from a careful review of the entire record that the conditions of both Sections have been met by clear and convincing evidence; that the conditions encountered by Mrs. Johnson on October 10, 1980, amounted to neglect of the children as contemplated in Subsection (B) of the Statute; that from the long history of the efforts made by the Department to effect the return of the children it is not reasonably likely that the conditions which resulted in such neglect could be substantially corrected or eliminated such as to allow the children safe return to their mother within a

reasonable amount of time; and finally it appears Ms. Perry, without good cause, has been unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to the children's foster care placement, notwithstanding the reasonable and appropriate efforts of the social agency to such end. The abuse of alcohol clearly appears to be the primary culprit herein. The mother simply denies that she has an alcohol problem; however, the record speaks to the contrary.

I am not unmindful of the drastic remedies provided by the Statute nor of the heavy responsibilities resting upon any Court called upon to terminate residual parental rights. However, when the evidence is clear the Court's duty is equally clear. Accordingly, an Order will enter terminating residual parental rights, confirming custody of the three children in the Department and directing the Department to make permanent plans for the placement of the children.